Jackson, Judge,
delivered the opinion of the court:
This is an appeal from a decision of the Commissioner of Patents, 64 USPQ 514, in a trade-mark opposition proceeding, affirming that of the Examiner of Trade-Mark Interferences, dismissing the opposition of appellant and adjudging that appellee is entitled to the registration of its trade-mark.
Appellant relies on the confusion in trade clause of Section 5 of the Trade-Mark Act of February 20, 1905. Both parties took testimony and introduced several exhibits.
Appellant for a great many years prior to the first use by appellee of the trade-mark “Demon,” as applied to a “Demon Rodent Gun,” ■owned a registered mark “Demon Grip” with the letters of the second work spaced between the letters of the first and another registered mark comprising the same words similarly arranged on a representation of a coupling gripped in what appears to be a demoniac hand. Apparently the latter mark was the only one in use at the time testimony was taken.
Appellant is a corporation organized under the laws of the State <of Minnesota with its principal place of business at St. Paul. For *953 many years it lias manufactured and sold well screens, jacket ribbon, and couplings for pump rods. About 20 years ago it also made a few, deep well pumps. The manufacture of those pumps was discontinued after a very short period of time because it was thought that their sale might bring appellant into competition with some of its customers. The only product of appellant to which either of its registered marks was applied is the pump-rod coupling which it sold, with the exception of 3 or 4 states, all over the United States, including California, Oregon, and Washington.
The couplings for the metal pump rods of appellant, as they appear from exhibits in evidence, are about two inches long and vary in relatively small interior diameter. They are reversely internally threaded on both ends. The threads do not meet in the middle of the coupling which, on its outer periphery, is so formed as to be easily rotated by means of a wrench. The couplings are for joining rods used in well pumping and are sometimes called “sucker” rods.
According to the record appellant’s involved product is sold to the hardware trade handling pumps and parts thereof.
Appellee is a division of the Stauffer Chemical Company with headquarters in San Francisco. It sells carbon bisulphide, a highly volatile and toxic substance which is used as a fungicide, insecticide, herbicide, and a rodenticide, in five-gallon tins and 52%-gallon drums.
In order to increase the sale of carbon bisulphide, especially in connection with the eradication of rodents, such as gophers or ground squirrels, appellee perfected a device which comprises, in accordance with an application for a patent, a metal cylinder, the base of which is bolted to a stand. Within the cylinder is a reservoir for containing carbon bisulphide. Projecting into the reservoir is^a plunger surrounded by a casing of wider diameter. The plunger is motivated by mean of a T-handle grip attached to the top end of the plunger and is situated on the outer side of the top of the apparatus. In order that the noxious fluid may be forced by means of the plunger and cylinder into the gopher hole, an exit is provided to which a hose is attached. At the end of the hose a spray nozzle is fixed so that, due to the pumping action of the plunger, carbombisulphide is shot through the nozzle into the gopher hole in a finely sprayed condition. The hole is then plugged and the carbon bisulphide, clue to its volatility, is said to fill the underground habitation of the gophers with lethal effect. The device weighs 15 pounds and has a liquid capacity of two gallons. It is equipped with a wooden-bucket type handle, may be conveniently carried from place to place and sells for $26.00 packed F. O. B. at appellee’s shipping point.
Appellee in its application for registration states that the notation “Demon” is to be used upon “machines for withdrawing, from a supply of a noxious liquid material, as carbon bisulphide contained *954 in the machine, a charge of said material and spraying said charge into rodent burrows.”
The Examiner of Interferences in his decision properly stated that the dominant feature of the marks of the parties is t'he word “Demon.”' Holding that the goods of the parties are not of the same descriptive-•properties, he dismissed the notice of opposition and adjudged that appellee is entitled to the registration of its mark.
The commissioner in his decision, answering the .argument of appellant that appellee’s machine could be adapted to uses other than pumping poisonous gas into gopher holes stated that such use is within the bounds of possibility, but pointed out that the proposed registration of appellee’s mark “* * * is expressly restricted to machines-for the use set forth in the application.” The commissioner further stated that even should appellant in the normal expansion of its business resume the manufacture of pumps, there was no apparent reason why it should use this particular mark to identify them and that,, while the question was not before him, he expressed a doubt that deep well pumps could be said to possess the same descriptive properties as appellant’s device.
The record on behalf of appellant does not disclose who may be the ultimate purchasers of its couplings. It only appears that they are sold to hardware dealers and the like, as aforesaid. It is argued most strenuously by counsel for appellant that the ultimate purchasers of the couplings are farmers, that the device of appellee is a pump and, since farmers have known for many years that appellant’s trademark is applied to pump-rod couplings and because pump rods are used in a pumping combination, there would be likelihood of confusion as to origin.
The couplings are packed 25 to the carton and 20 cartons to a case and are sold to the hardware dealer or jobber at the price of $3.00 per hundred, less 30 percent for those that are galvanized and 46 percent for those that are not. Whether or not appellant’s couplings are advertised for sale in. papers, magazines or the like does not appear.
Appellee contracts for the construction of its device and it is offered to purchasers “* * * through the channels of regular sales through our advertising, and then people usually write for more information.” Appellee has, according to the record, on a few occasions sold the device to “regular dealers,” but its preference is to sell directly to consumers, agricultural commissioners, county agents, state departments of agriculture and so forth. It further appears that a very small return is realized by appellee in the sale of its device, the main profit accruing from the greater quantity of carbon bisulphide sold by reason of the use of its apparatus. Appellee advertises what it calls its “Demon Rodent Gun” in farm papers almost exclusively, *955 which include The California Grange News, The Oregon Grange News, The Idaho Farmer, The Utah Farmer, The Montana Farmer and The Arizona Farmer. The sales of the apparatus are very small when compared with those of appellant’s couplings and have been confined largely to states in the far West.
Since it is alleged in the application for registration that the mark has been used only since October 1939, seemingly the business of distributing appellant’s device may be only in its infancy.
It is clear to us that ordinarily a coupling such as that of appellant, would not be used in appellee’s involved product. It is also clear that, there is a very great difference in the cost of the articles.
We believe it would be reasonable to assume, even though the-involved goods of the parties were purchased entirely by farmers,, that the “Demon Rodent Gun”, because of the substance used therein and the purpose for which it is employed, would be carefully scrutinized as to price, efficiency, and, of course, the maker would be identified. Farmers, in our opinion, would not think of a chemical sales, company, or its goods, in connection with the oi’igin of pump-rod. couplings, nor consider the manufacture of such articles, or other water or oil controlling devices, as the source for a poison-distributing-applicator.
While the marks of the parties may be deemed identical in trademark law, there is, in our opinion, no likelihood of confusion as to-the origin of their resfiective goods because of the difference in the-kind of business of the parties, the difference in appearance, size and price of the articles, and the discrimination we believe would be exercised by those desiring to purchase the apparatus of appellee.
Furthermore, it does not seem reasonable that either party, in the-natural extension of its business, would manufacture or sell articles, of the same descriptive properties. That the device of appellee is. known as a “gun” seems to us to be in accordance with its make-up and function and, while it is true that it is actuated by pump action,, we do not think it can be properly termed a “pump” as contended by appellant.
Many cases have been cited in the briefs of the parties, but it. is not necessary to discuss or refer to any of them. We have held, repeatedly that in trade-mark litigation each case is to be decided in the light of its own facts and that ordinarily' precedents are not to be-relied on. In re Dutch Maid Ice Cream Company, 25 C. C. P. A. (Patents) 1009, 95 F. (2d) 262, 37 USPQ 202.
For the reasons herein set out, the decision of the Commissioner of Patents is aifirmed.